AMERICAN INSURANCE COMPANY

v.

DONATELLI CONSTRUCTION
CO., INC., et al.

No. 97–474–Appeal.

Supreme Court of Rhode Island.

June 11, 1998.

Michael P. Duffy, Boston, MA, for Plaintiff.

Peter Lawson Kennedy, Providence, for Defendant.

Before WEISBERGER, C.J., and BOURCIER and FLANDERS, JJ.

## OPINION

PER CURIAM.

These cross-appeals ask us to reverse a trial justice's failure-of-proof conclusion in a case tried to a Superior Court justice sitting without a jury. Discerning no error in this ruling, we decline to do so and affirm the judgment in favor of the plaintiff.

### Facts and Travel

This was an action for a declaratory judgment brought by plaintiff/cross-appellant American Insurance Company (American), against defendant Donatelli Construction Company, Inc. (Donatelli) and various subcontractors or suppliers to Donatelli, including the defendant/cross-appellant Northeast Steel Corporation (Northeast). The lawsuit arose out of a Providence construction project known as the Sara Salisbury Nursing Home (Salisbury project) for which Donatelli served as the general contractor. In October of 1988 Donatelli obtained financing for the project from Rhode Island Hospital Trust National Bank (Hospital Trust). It did so by submitting certain performance and payment bonds ostensibly authorized and executed by American as surety. Attached to the bonds were photostatic copies of a power of attorney granted by American and bearing the purported signature of Robert B. Burns (Burns), a former agent of American. Although it was undisputed in this litigation that these documents and the signature of Burns were in fact forged and invalid, the forger of these documents has never been identified.

After Donatelli failed to pay certain of its subcontractors on the project, they then sought payment from American as Donatelli's surety under the bonds.[1] Upon learning of the existence of these bogus documents, American sought a declaratory judgment in the Superior Court that it had no liability to any parties involved in the construction project that might have relied upon the bonds.

1. Donatelli was placed in receivership on June 26, 1991.

Northeast filed a counterclaim to American's declaratory-judgment complaint, alleging that it had relied on the existence of the performance and payment bonds in entering into a subcontract agreement with Donatelli and that American was liable as surety for Donatelli's unpaid debt of $104,880.90 for project-related work and materials supplied by Northeast at Donatelli's behest. At trial Northeast proceeded upon the theory that notwithstanding the fact that the bonds were indisputably forged, American should be held to answer for the debt because it negligently allowed the critical power-of-attorney documents to fall into the hands of the unknown forgers.

Northeast presented evidence showing that several years before the bonds in question surfaced, American had employed the Stidsen Agency (Stidsen or agency) as a bonding agent. Burns, whose forged signature later appeared on the bonds, was an employee of Stidsen and had been granted power of attorney by American to issue bonds on its behalf. In late 1985 Burns left the agency, and American accordingly revoked his power of attorney. Northeast sought to prove that although American had advised Burns to destroy all copies of his power of attorney upon departing Stidsen, American never took any additional steps to ensure that all copies had been retrieved. As a result, Northeast theorized, certain remaining copies of the power of attorney found their way from Stidsen into the hands of the unidentified forger and eventually made their way to Donatelli and Hospital Trust.

To buttress this theory, Northeast presented evidence that shortly before Burns left the employ of Stidsen, another employee of that agency had written two or three bogus bid bonds on behalf of Donatelli in connection with other construction projects, all without authority from American. As a result of this malfeasance American terminated this individual's powers to act on its behalf. Despite this turn of events, Northeast contends, American still mailed Burns' power-of-attorney documents to the care of the agency itself rather than deliver them to Burns directly, thereby adding the fuel of further opportunity to the fire of misconduct already raging because of the other alleged forgeries at the agency.

One glaring gap, however, remained in Northeast's evidence. It was unable to muster any proof showing that the copies of Burns' power of attorney attached to the bonds drawn up for the Salisbury project came from the files of the agency or that the agency had retained any such copies after Burns' tenure. Despite alleging a nefarious alliance between Stidsen and Donatelli in the past and showing that American never dispatched personnel to Stidsen to collect any remaining copies of Burns' power of attorney, Northeast was unable to link the Salisbury project's forged bond documents to American's alleged negligence in its dealings with Stidsen. Notably, Northeast never called any representatives from Donatelli to explain how it came to submit the forged documents to Hospital Trust.

The trial court justice found that this gap in Northeast's proof was fatal. Hence he concluded that Northeast had "failed to convince this Court by a fair preponderance of the evidence that the plaintiff and counter defendant, American Insurance Company, was guilty of any errors or omissions which were the proximate cause of the defendant counterclaimants, Northeast Steel's loss of the balance due under its subcontract with Donatelli Construction."

Both parties have appealed from the final judgment entered in the case. Northeast contends that the trial justice's decision was clearly erroneous because the evidence presented compelled a decision in its favor based upon an estoppel theory derived from American's negligent delivery and monitoring of the Burns power-of-attorney documents. Although American defends the trial justice's decision, it also argues in its cross-appeal that a motion justice erred in vacating an earlier summary judgment entered against Northeast. We ordered Northeast to show cause before a panel of this Court why these appeals should not be summarily decided. None having been shown, we proceed to decide the matter without further briefing or argument.

## Standard of Review

■ Our review of factual findings and conclusions of a Superior Court justice sitting without a jury is very deferential. "We shall not disturb the findings of the trial justice on appeal unless he or she overlooked or misconceived material evidence or was otherwise clearly wrong." *Wickes Asset Management, Inc. v. Dupuis,* 679 A.2d 314, 317 (R.I.1996).

## Analysis

■ Having scrutinized the record and the parties' arguments on appeal, we are unable to conclude that the trial justice overlooked or misconceived material evidence in this case. On the contrary, the transcript of the trial justice's bench decision evinces his consideration of each aspect of Northeast's case and the various inferences that it urged the trial justice to draw therefrom. In fact, the trial justice appears to have indicated his willingness to accept arguendo each fact that Northeast sought to establish. Nonetheless, he concluded that no evidence had been presented that would shed any light on the mysterious provenance of the forged documents.

Nothing in the cold record before us persuades us that this conclusion was clearly wrong. As the trial justice intimated, the list of suspected forgers was not limited just to Stidsen or to some other unidentified Stidsen agent. To require the trial justice to find that American's negligence caused this forgery or that some associate of Stidsen rather than any other entity in the world forged the bond documents would indeed have required the court as factfinder to have engaged in rank speculation. The trial justice could not abide by this invitation, and we are unable to conclude that he was clearly wrong in this respect. Furthermore, Northeast has advanced no argument that sureties like American should be held to some strict-liability standard that would in some manner excuse Northeast from its burden of proving proximate causation for its alleged losses, and we perceive none that would be applicable to these facts. Accordingly we have no basis to disagree with the trial justice's conclusion that Northeast simply failed to make out its case.

Turning to American's cross-appeal, American contends that a Superior Court hearing justice improperly reinstated Northeast after a summary judgment had entered against it a number of years before trial. In light of our conclusions above, we need not reach this issue. We note, however, that our ability to review this ruling on its merits would in any event have been thwarted by American's failure to include a transcript of the hearing preceding the challenged action of the court in the record presented for our review. *See* Rule 10(b)(1) of the Supreme Court Rules of Appellate Procedure; *Bourdon's, Inc. v. Ecin Industries, Inc.,* 704 A.2d 747, 758–59 (R.I.1997).

## Conclusion

For the reasons set forth above both appeals are denied, and the judgment below is affirmed.

LEDERBERG and GOLDBERG, JJ., did not participate.